Barry Felder
Rachel Kramer
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
(212) 682-7474
bgfelder@foley.com
rkramer@foley.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

GREYSTONE BANK,

                              Plaintiff,

                 -against-

FELIX MIGUEL PERALTA, CYPRESS
FINANCIAL RECOVERIES LLC, CITY OF
NEW YORK, NEW YORK STATE
DEPARTMENT OF TAXATION AND
FINANCE, and NEW YORK CITY TRANSIT
ADJUDICATION BUREAU,

                             Defendants.

Case No. 10-cv-695 (BMC)

**AMENDED COMPLAINT**

------------------------------------------------------------X

       Plaintiff Greystone Bank ("Greystone" or "Plaintiff"), by its attorneys, Foley & Lardner LLP, for its Amended Complaint, alleges as follows:

### NATURE OF THE CASE

       1.     This is an action to foreclose on a first mortgage lien on premises situated in the County of Kings, designated as Block 1974, Lot 25 with an address of 160 Quincy Street, Brooklyn, New York (the "Property"), and more particularly described in Schedule A annexed hereto, and for related relief.

1

## PARTIES

2. Plaintiff Greystone is a North Carolina corporation with its principal place of business in Raleigh, North Carolina and is the owner and holder of the subject first mortgage lien on the Property.

3. Upon information and belief, defendant Felix Miguel Peralta ("Borrower") is a resident of the state of New York and is the mortgagor of the first mortgage lien on the Property and the maker of the note secured by the mortgage lien.

4. Upon information and belief, defendant Cypress Financial Recoveries LLC ("Cypress") is a New Jersey limited liability corporation. Cypress's members are individuals, all of whom are citizens of either New Jersey or Florida, and none of whom are citizens of North Carolina. Cypress is named as a defendant in order to bar and foreclose said defendant from any claim, right, title or interest which it may claim in the Property by reason of a judgment against Felix Peralta.

5. Upon information and belief, defendant the City of New York is named as a defendant in order to bar and foreclose said defendant from any claim, right, title or interest which it may claim in the Property by reason of judgments obtained by its agencies, specifically:

    a. judgments by the New York City Parking Violations Bureau against Felix Peralta: (i) in the amount of $105.00 plus interest (no. 1054675806); and (ii) in the amount of $80.00 plus interest (no. EAW1185);

    b. judgments by the New York City Environmental Control Board against Felix Peralta docketed in July 2009 in the amount of $300.00 (violation no. 0172948500) and in January 2000 in the amount of $300.00 (violation no. 0107400509);

    c. judgments by the Criminal Court of the City of New York against Felix Peralta: (i) in the amount of $50.00 docketed May 31, 2002 (Index No. 0024311590); (ii) in the amount of $50.00 docketed July 12, 2002 (Index No. 0024470820); and (iii) in the amount of $50.00 docketed July 22, 2002 (Index No. 0024537620); and

    d. a tax warrant of the New York City Department of Finance against Felix Peralta in the amount of $133.23 docketed April 3, 2007 (Index No. S000001112).

6. Upon information and belief, defendant New York State Department of Taxation and Finance is named as a defendant in order to bar and foreclose said defendant from any claim, right, title or interest which it may claim in the Property by reason of tax warrants against Felix Peralta docketed on the following dates in the following amounts: (i) Index No. E021950484, docketed February, 2008 for $846.71; (ii) Index No. E021950484, docketed May 6, 2008 for $841.48; (iii) Index No. E021950484, docketed July 22, 2008, 2008 for $831.06; (iv) Index No. E021950484, docketed October 15, 2008 for $784.14; (v) Index No. E021950484, docketed January 21, 2009 for $984.91; and (vi) Index No. E001722032, docketed September 22, 2009 for $1,315.11.

7. Upon information and belief, defendant New York City Transit Adjudication Bureau is a New York corporation with its principal place of business in the State of New York. New York City Transit Adjudication Bureau is named as a defendant in order to bar and foreclose said defendant from any claim, right, title or interest which it may claim in the Property by reason of violations filed against Felix Peralta.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

## FIRST CAUSE OF ACTION
### (FORECLOSURE OF REAL PROPERTY)

10. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

11. For value received, Borrower duly executed and delivered to Greystone a Mortgage Note dated September 17, 2008 (the "Note"). Pursuant to the Note, Borrower promised to pay to the order of Greystone the principal sum of Five Hundred Thirty-five Thousand and 00/100 Dollars ($535,000.00), with interest thereon, in installments of principal and interest. A copy of the Note is attached hereto as Exhibit 1.

12. At or about the same time, in order to secure the payment of the principal sum set forth in the Note and the interest due thereon, Borrower, as mortgagor, executed and delivered to Greystone, as mortgagee, a first mortgage lien on the Property in the principal amount of Five Hundred Thirty-five Thousand and 00/100 Dollars ($535,000.00), and established by a Mortgage dated September 17, 2008 (the "Mortgage").  The Mortgage was duly recorded in the Office of the City Register of the City of New York on September 24, 2008 in CRFN No. 2008000379618, and was duly indexed according to law, and the mortgage tax, if any imposed upon the recording therefore, was duly paid.  A copy of the Mortgage is attached hereto as Exhibit 2.

13. Greystone is the beneficial holder of the Mortgage.  Mortgage Electronic Registration Systems, Inc. ("MERS") is the nominee, in an administrative capacity, for Greystone Bank and is the legal holder of the mortgage at issue.

14. By the Mortgage (at section 2), Borrower granted Greystone a security interest under the Uniform Commercial Code "for any of the Mortgaged Property which, under applicable law, may be subjected to a security interest under the Uniform Commercial Code, whether such Mortgaged Property is owned now or acquired in the future, and all products and cash and non-cash proceeds thereof (collectively, 'UCC Collateral'), and Borrower hereby grants to . . . Lender a security interest in the UCC Collateral."

15. The Mortgage further provides (at section 2) that "[i]f an Event of Default has occurred and is continuing, Lender shall have the remedies of a secured party under the Uniform Commercial Code, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Lender may exercise its remedies against the UCC Collateral separately or together, and in any order, without in any way affecting the availability of Lender's other remedies.  This Instrument constitutes a financing statement with respect to any part of the Mortgaged Property which is or may become a Fixture."

16. By the Note (at section 3), Borrower covenanted to pay the unpaid principal balance and the interest thereon in monthly payments.

17. The Note provides (at section 3(c)) that "[m]onthly payments of principal and interest, initially in the amount of **Three Thousand Three Hundred Thirty-Seven Dollars and 70/100 ($3,337.70)**, shall be payable commencing on **November 1, 2008,** and on the same day of every calendar month thereafter, until the entire unpaid principal balance evidenced by this Note is fully paid."

18. The Note further provides (at section 3(b)) that interest shall accrue on the unpaid principal balance, initially at a rate of 6.375 percent (6.375%) per annum until October 1, 2011, and at a variable rate thereafter.

19. Section 3(a) of the Note provides:

> At any time an Event of Default shall have occurred and be continuing and/or after maturity of the Loan, including maturity upon acceleration, the unpaid principal balance, all accrued and unpaid interest and all other amounts payable under the Note shall bear interest at the "**Default Rate**" set forth in this Note.

20. The "Default Rate" is defined (at section 8 of the Note) as "equal to the lesser of **five (5)** percentage points above the rate stated in Section 3 of this Note or the maximum interest rate which may be collected from Borrower under applicable law."

21. Pursuant to the Mortgage (at Section 22(a)), an Event of Default is defined as, among other things, "any failure by Borrower to pay or deposit when due any amount required by the Note, this Instrument or any other Loan Document."

22. Under Section 21 of the Mortgage, a "Transfer" of "all or part of the mortgaged property or any interest in the mortgaged property" constitutes an Event of Default. "Transfer" is defined as, *inter alia*, "the granting, creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary or by operation of law)."

23. The Mortgage also provides (at section 44) that upon an Event of Default (as described in the Mortgage) Greystone has the right to commence a foreclosure proceeding and to the appointment of a receiver and provides in pertinent part as follows:

> At any time after the occurrence of an Event of Default, Lender, at Lender's option, may declare the Indebtedness to be immediately due and payable without further demand, and may foreclose this Instrument by judicial proceeding or by non-judicial foreclosure, shall be entitled to the appointment of a receiver, without notice, and may invoke any other remedies permitted by applicable law of the Property Jurisdiction or provided in this Instrument or in any other Loan Document. Lender may, at Lender's option, also foreclose this Instrument for any portion of the Indebtedness which is then due and payable, subject to the continuing lien of this Instrument for the balance of the Indebtedness.

24. Moreover, upon an Event of Default, Borrower consented to the appointment of a receiver. Section 3(d) of the Mortgage provides that Greystone has the right to the appointment of a receiver and provides in pertinent part as follows:

> [I]f an Event of Default has occurred and is continuing, regardless of the adequacy of MERS and/or Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth

6

in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including appointment of a receiver *ex parte* if permitted by applicable law.

25. Pursuant to Section 44 of the Mortgage, Borrower covenanted to pay Greystone's attorneys' fees and costs. The Mortgage provides in part as follows: "Lender shall be entitled to collect all costs and expenses allowed by New York law, including attorneys' fees, costs of documentary evidence, abstracts, title reports, statutory costs and any additional allowance made pursuant to Section 8303 of the Civil Practice Law and Rules."

26. Borrower failed to comply with the terms and conditions of the Mortgage by failing to make any monthly payments due after April 1, 2009.

27. Upon information and belief, Borrower also failed to comply with the terms and conditions of the Mortgage by virtue of certain Transfers as detailed in paragraphs 4 through 7 above.

28. By letter to the Borrower dated January 12, 2010, Greystone elected to accelerate the subject loan. Accordingly, pursuant to section 6 of the Note, the entire unpaid principal balance, any accrued interest, the prepayment premium, if any, and all other amounts payable under the Note and any other Loan Document thereby became immediately due and payable.

29. As of December 31, 2009, there is due and owing to Greystone the unpaid principal balance of $532,083.19 together with interest and default interest, which shall continue to accrue, and late fees and other charges, which have not been paid to date.

30. In order to protect its security, Greystone may be compelled during the pendency of this action to pay taxes, assessments, water and sewer charges, insurance premiums

and other charges affecting the Property, and Greystone requests that all sums so paid or expenses so incurred by it, with interest thereon accrued, together with Greystone's costs and reasonable attorneys' fees, be added to the sum otherwise due under the Mortgage, as provided in the Mortgage and be deemed secured by the Mortgage and be adjudged a valid lien on the Property.

31. Borrower has failed to comply with the terms and conditions of the Note and Mortgage, as aforesaid, and Greystone is therefore entitled to the appointment of a receiver pendente lite.

32. No other action or proceeding for the recovery of the money mentioned in this Complaint or to foreclose the lien of the Mortgage, or any part thereof, has been commenced by Greystone.

33. The Property described in Paragraph 1 of the Complaint should be sold in one parcel, "as is," subject to (i) any state of facts that may be shown on an accurate survey; (ii) the rights of statutory tenants, if any; (iii) the right to maintain vaults and vault space, if any, and any charges due to any municipal entity therefor; (iv) easements, covenants, conditions, agreements reservations and restrictions of record, if any; (v) violations, orders or notices filed or issued by any governmental authority against the Property, including, but not limited to, any environmental violations and notices to repair sidewalk or charges for sidewalk repairs; and (vi) municipal zoning ordinances.

## SECOND CAUSE OF ACTION
### (FORECLOSURE OF PERSONAL PROPERTY)

34. Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

35. By virtue of a UCC-I Financing Statement, Greystone is the holder of a security interest in certain personal property on the Property as security for the Note and Mortgage. The UCC-I Financing Statement was filed with Office of the City Register of the City of New York on October 2, 2008 in CRFN No. 2008000390922.

36. Because Borrower is in default of the obligations under the Note and Mortgage, Greystone is entitled to foreclose its security interest in the personal property of Borrowers to satisfy the indebtedness evidenced by the Note and Mortgage.

## THIRD CAUSE OF ACTION
### (RENTAL PROCEEDS)

37. Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

38. By the Mortgage (at Section 3(a)),

> Borrower absolutely and unconditionally assigns and transfers to Lender all Rents. It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of the Borrower. . . Borrower and Lender intend this assignment of Rents to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only.

39. Section 3(b) of the Mortgage further provides:

> From and after the occurrence of an Event of Default, and without the necessity of the Lender entering upon and taking and maintaining control of the Mortgaged Property directly, or by a receiver, Borrower's license to collect Rents shall automatically terminate and Lender shall without notice be entitled all Rents as they become due and payable, including Rents then due and unpaid. Borrower shall pay to Lender upon demand all Rents to which Lender is entitled.

40. By its January 12, 2010 letter, Greystone notified Borrower of the termination of his license to collect the rents and profits from the Property. The letter further

9

stated that "Greystone is entitled to all rents as they become due and payable, including rents currently due and unpaid. Any rents Borrower received after the occurrence of the default shall be received and held by Borrower in trust for the benefit of Greystone. All such rents shall be applied only to bona fide operating expenses to third parties in connection with the operation of the property with excess paid to Greystone, to be applied in accordance with the Loan Documents."

41. Despite such demand and Borrower's agreement to an assignment of leases and rents, upon information and belief, Borrower has continued to collect rents and profits and has failed to hold such rents in trust as described above.

42. Accordingly, Greystone has suffered damages in an amount to be proved at the trial of this action.

## FOURTH CAUSE OF ACTION
### (POSSESSION)

43. Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

44. By virtue of Borrower's default under the terms of the Note and Mortgage, Greystone is entitled to possession of the Property.

45. Upon information and belief, Borrower is in possession of the Property and has, since his default described herein, deprived Greystone of possession of the Property.

46. Upon information and belief, each of the defendants named in this action claims to have or may have, some right, title, interest or lien in or to the Property or some part thereof, which right, title, interest or lien, if any, is subject and subordinate to the lien of Greystone on the Property, and their rights to possession, if any, are subordinate to Greystone's.

47. In order to protect its security, Greystone may be compelled during the pendency of this action to pay taxes, assessments, water and sewer charges, insurance premiums and other charges affecting the Property, and Greystone requests that all sums so paid or expenses so incurred by it, with interest thereon accrued, together with Greystone's costs and attorneys' fees, be added to the sum otherwise due under the Mortgage as provided therein, and be deemed secured by the lien of the Mortgage and be adjudged a valid lien on the Property.

### FIFTH CAUSE OF ACTION
### (AS AGAINST DEFENDANT FELIX MIGUEL PERALTA PERSONALLY)

48. Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

49. Section 9 of the Note provides as follows:

**Full Recourse Personal Liability.** Borrower shall have full recourse personal liability under this Note, the Security Instrument and any and all other Loan Documents for the repayment of the indebtedness and for the performance of any and all obligations under the Loan Documents.

50. By virtue of Borrower's default under the Mortgage, Borrower is personally liable to Greystone for the payment of all amounts due under the Mortgage and Note, including interest, attorneys' fees, costs and all other amounts due under the Loan Documents.

WHEREFORE, plaintiff Greystone demands judgment against defendants as follows:

### ON THE FIRST CAUSE OF ACTION

e. that defendants herein, and all persons claiming under them or any or either of them, subsequent to the filing of the notice of pendency of this action, be forever barred and foreclosed of all right, claim, lien, title and equity of redemption of, in and to the Property and each and every part thereof, and that the Property may be

decreed to be sold according to law; that the monies arising from the sale of the Property may be brought to court; that Plaintiff may be paid the amount due on the Mortgage and Note with interest to the time of such payment, and the costs and disbursements of this action together with an award of reasonable attorneys' fees, and the expense of said sale, together with any amounts which have been or may be advanced by Plaintiff to protect the security afforded by the Mortgage with interest thereon from the time of such payment, so far as the amount of such monies properly applicable thereto will pay the same and that defendant Felix Miguel Peralta be adjudged to pay any deficiency which may remain after applying all of said monies so applicable thereto;

f.  fixing the amount due Plaintiff under the Note and Mortgage as set forth herein, including the expenses of any foreclosure sale, the costs, allowances and disbursements of this action and reasonable attorneys' fees, any monies advanced and paid by Plaintiff pursuant to the Note and Mortgage to protect its interest in the Property, together with interest thereon;

g.  appointing a receiver of the Property, with the usual powers and duties, during the pendency of this action to receive and collect the earnings, revenues, rents, issues, profits and income from the Property;

h.  directing that the Property be sold according to law at a judicial sale to satisfy the amount due Plaintiff;

i.  directing that Plaintiff be paid all amounts due under the Note and Mortgage as fixed by the Court from the proceeds of any judicial sale;

j.  declaring that the remaining defendants and each person claiming through from or under them are barred and forever foreclosed of all right, estate, claim, interest, title, lien and equity of redemption to, or, in the Property;

k.  directing that, after application of the funds to Plaintiff above, any surplus funds arising from the sale be brought into Court and disbursed pursuant to further order of this Court;

### ON THE SECOND CAUSE OF ACTION

l.  for an Order foreclosing the security interest of Plaintiff, entitling it to possession of the property described in the UCC-1 Financing Statement and directing a sale thereof, together with the Property with the proceeds to be applied to the satisfaction of the indebtedness evidenced by the Note and Mortgage;

### ON THE THIRD CAUSE OF ACTION

m.  against defendant Felix Miguel Peralta for damages equal to all Rents paid or payable by any tenants or occupants of the Property held or collected from January 12, 2010 to the date of the judgment hereunder, with interest thereon;

### ON THE FOURTH CAUSE OF ACTION

n.  granting Plaintiff possession of the Property against the defendants herein or anyone holding through, from or under them; and

o.  granting Plaintiff damages for mesne profits;

## ON THE FIFTH CAUSE OF ACTION

p.  against defendant Felix Miguel Peralta for all amounts due under the Mortgage and Note plus interest due thereon together with attorneys' fees, costs and such other and further relief as the court deems proper; and

## ON ALL CAUSES OF ACTION

q.  for an award of reasonable attorneys' fees, costs and disbursements and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 24, 2010

FOLEY & LARDNER LLP

By:   /s *Rachel Kramer*
Barry G. Felder
Rachel E. Kramer
90 Park Avenue
New York, New York 10016
(212) 682-7474
Attorneys for Plaintiff
Greystone Bank

## SCHEDULE A

## DESCRIPTION

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the westerly side of Bedford Avenue and the southerly side of Quincy Street;

RUNNING THENCE southerly along the westerly side of Bedford Avenue, 21 feet 6 inches;

THENCE westerly parallel with Quincy Street and part of the distance through a party wall, 66 feet 10 inches;

THENCE northerly parallel with Bedford Avenue, 21 feet 6 inches to the southerly side of Quincy Street;

THENCE easterly along the southerly side of Quincy Street, 66 feet 10 inches to the corner, the point or place of BEGINNING.